UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MAUREEN LYNCH, individually,

    Plaintiff,

v.                                         Case No.:  2:24-cv-340-SPC-NPM

RANDAZZO FILICE, MARCELA FILICE, TRACEY MORGANELLI, ANNE DOWDELL, ADAM MCKAY, THOMAS HAAS, COURTNEY TURNEY, CAREN SNEAD WILLIAMS, JM FAMILIES ENTERPRISES, INC., THE NEWPORT GROUP, INC., ANNE MCTIGUE, JOSHUA SHERIDAN, MARTHA ARISTIZABAL, and BUSCIGLIO & SHERIDAN LAW GROUP, P.A.,

    Defendants.
_____/

## OPINION AND ORDER

Before the Court are Defendants The Newport Group, Inc. and Anne McTigue's ("Newport Defendants") Motion to Dismiss (Doc. 42),[1] Plaintiff Maureen Lynch's Motion to Remand (Doc. 100), and Newport Defendants'

---

[1] Defendants JM Family Enterprises, Inc., Caren Snead Williams, and Courtney Turney ("JM Family Defendants") filed a notice joining Newport Defendants' motion to dismiss and incorporating by reference the arguments made therein. (Doc. 56). This practice is generally forbidden by local rule. *See* Local Rule 3.01(f) (prohibiting incorporation by reference of arguments made in another motion). But the Court temporarily suspended this local rule during the Rule 16 conference to accommodate the many parties and overlapping arguments in this case. *See* Local Rule 1.01(b) (allowing a judge to temporarily suspend the application of a local rule if reasonably necessary to achieve the purpose of the rules).

Motion to Strike (Doc. 126). The parties responded (Docs. 68, 111, 127) and replied (Docs. 81, 124). They also provided supplemental briefing on remand (Docs. 112, 123). The central issue presented in these motions is whether the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq* completely preempts Plaintiff's claims. For the reasons below, the Court finds that ERISA preempts Plaintiff's claims, denies the motion to remand, and grants the motion to dismiss.

## Background

This action arises from competing claims to life insurance proceeds. The amended complaint alleges as follows.[2] JM Family Enterprises, Inc. employed John Lynch. (Doc. 5 ¶ 20). JM Family agreed to purchase Mr. Lynch life insurance as part of its Executive Enhanced Life Insurance Plan ("EELIP"). (Doc. 5 ¶ 26). To carry out this plan, the parties entered a Split Dollar Agreement ("SDA") in which JM Family agreed to purchase a Prudential Life Insurance policy insuring Mr. Lynch and designating his wife, Maureen Lynch, as the beneficiary. (*Id.* ¶ 26, 27). The agreement gave Mr. Lynch the right to provide JM Family with a beneficiary change form during his life. (*Id.* ¶¶ 29–31). Then JM Family, as owner of the policy, would notify the insurance

---

[2] The Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to" Plaintiffs. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009).

2

broker, Newport Defendants, who would provide an executed change of beneficiary form to Prudential. (*Id.* ¶ 30).

During the final years of Mr. Lynch's life, he suffered from physical and cognitive decline. (*Id.* ¶¶ 33–39, 65–66). Days after Mr. Lynch was released from a hospital—where he had undergone heart surgery and been diagnosed with dementia—Randazzo Filice tried to change the beneficiary of the policy from Ms. Lynch to Filice and Anne Dowdell. (*Id.* ¶¶ 62, 67). But on December 30, 2022, Prudential notified Newport Defendants that it could not accept the form, as it did not include a company or policy number. (*Id.* ¶ 71). And, given Mr. Lynch's intervening death on December 8, 2022, Prudential also informed Newport Defendants that it could not accept a change in beneficiary form after his death. (*Id.* ¶¶ 71, 124).

Plaintiff claims that JM Family Defendants and Newport Defendants withheld this information from her. According to her, they believed that they might be liable to Filice and Dowdell due to the ineffective form. (*Id.* ¶ 259). So they misled Plaintiff and planned to redirect the proceeds to Filice and Dowdell. (*Id.* ¶ 259). They disclosed to Plaintiff that there was an effort to change the named beneficiary but intentionally withheld the relevant documents and that the effort failed. (*Id.* ¶¶ 262–64). Ultimately, JM Family Defendants and Newport Defendants' actions caused Plaintiff to incur unnecessary attorney's fees. (*Id.* ¶¶ 268–70). So Plaintiff sued them in state

3

court for "Count XII: Attempt to Defraud" and "Count XIII: Conspiracy to Commit Fraud in the Concealment." (*Id.* ¶¶ 253–73).

Dowdell sued in state court, too, claiming that the beneficiary change form was effective. She seeks a declaration that she is entitled to a portion of the life insurance benefits. (Doc. 6 ¶¶ 69–100). Alternatively, she sues for breach of contract, claiming that any defect in the beneficiary change was the fault of JM Family. (*Id.* ¶¶ 101–10). The state court consolidated the *Dowdell* and *Lynch* actions. (Doc. 1-4).

Newport Defendants removed the action arguing Plaintiff's claims are completely preempted by ERISA and therefore removable under 28 U.S.C. § 1441(c)(1). (Doc. 1).

## Analysis

Before diving into ERISA preemption, the Court must determine what matters are before it. To start, the *Lynch* matter does not involve only the claims against JM Family Defendants and Newport Defendants. The operative complaint includes twelve counts against fourteen defendants. But the other claims do not involve the life insurance dispute or a potential ERISA-preemption issue. As the parties agree, the Court lacks subject-matter jurisdiction over those claims (which primarily involve disputes over an IRA). So even if the Court has subject-matter matter jurisdiction over the claims

4

against JM Family Defendants and Newport Defendants, it must nonetheless sever and remand the other claims. *See* 28 U.S.C. § 1441(c).

Next, the Court must determine whether Newport Defendants removed the *Dowdell* matter. As discussed above, the state court consolidated *Lynch* and *Dowdell*. The Newport Defendants are defendants only in the *Lynch* matter and filed the notice of removal. Yet they assert that they successfully removed both matters because they were consolidated in state court for all purposes. (Doc. 112 at 9-14).

Whether both actions were removed turns on the effect of consolidation under Florida law. *See, e.g.*, *Carruth v. Moore*, No. 7:16-cv-1935-LSC, 2017 WL 11510375, *3 (N.D. Ala. May 26, 2017) ("However, because the consolidation occurred in state court under state law, the effect of the consolidation is determined by state law."). The ultimate question is whether under Florida law the consolidation destroyed the identity of each suit and merged them into one. *Id.*

Newport Defendants argue that the *Lynch* and *Dowdell* matters were merged into one because the trial court consolidated them for all purposes. But this view of consolidation is at odds with Florida law. Under Florida law, "[c]onsolidation does not merge suits into a single cause or change the rights of the parties, or make those who are parties in one suit parties in another. Rather, each suit maintains its independent status with respect to the rights

5

of the parties involved." *Anderson v. Epstein*, 202 So. 3d 893, 898 (Fla. Dist. Ct. App. 2016); *see also OneBeacon Ins. v. Delta Fire Sprinklers, Inc.*, 898 So. 2d 113, 115–16 (Fla. Dist. Ct. App. 2005); *CDI Contractors, LLC v. Allbrite Elec. Contractors, Inc.*, 836 So.2d 1031, 1033 (Fla. Dist. Ct. App. 2002); *Wagner v. Nova Univ., Inc.*, 397 So. 2d 375, 377 (Fla. Dist. Ct. App. 1981). Because the consolidation did not merge the matters into one action under Florida law, Newport Defendants only removed the *Lynch* matter to this Court.

So the Court is left with whether ERISA completely preempts the claims against JM Family Defendants and Newport Defendants in the *Lynch* action. Ordinarily, the well-pleaded complaint rule prevents a federal defense—such as preemption—from supplying subject-matter jurisdiction and supporting removal. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004). But ERISA creates two kinds of preemption: complete and conflict. *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009). Complete preemption is not limited by the well-pleaded complaint rule. *Davila*, 542 U.S. at 209. As the Supreme Court has explained, "the ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)).

Complete preemption turns on "(1) whether the plaintiff could have brought its claims under § 502(a); and (2) whether no other legal duty supports the plaintiff's claims." *Connecticut State Dental Ass'n*, 591 F.3d at 1345.

"The removing party bears the burden of demonstrating complete preemption and, where jurisdiction is not absolutely clear, the Eleventh Circuit favors remand." *Lee Mem'l Health Sys. v. Blue Cross & Blue Shield of Fla., Inc.*, 248 F. Supp. 3d 1304, 1310 (M.D. Fla. 2017). To determine whether Newport Defendants have met their burden, the Court "may consider the evidence in and outside the petition for removal and motion to remand." *Id*.

To satisfy the first step, "(1) the plaintiff's claim must fall within the scope of ERISA; and (2) the plaintiff must have standing to sue under ERISA." *Id*. at 1350. For a claim to fall within the scope of ERISA, there must be an ERISA plan. *Garcon v. United Mut. of Omaha Ins.*, 779 F. App'x 595, 597 (11th Cir. 2019). An ERISA plan exists if "from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Id*.

Under ERISA, an employee benefit plan may be a welfare benefit plan, a pension benefit plan, or both. *See* 29 U.S.C. § 1002(3). Newport Defendants claim that a welfare benefit plan is at issue. An employee welfare benefit plan is defined as (1) "any plan, fund, or program," (2) "established or maintained," (3) "by an employer," (4) "for the purpose of providing for its participants or

their beneficiaries," (5) "through the purchase of insurance or otherwise . . . benefits in the event of . . . death" (or other enumerated benefits). 29 U.S.C. § 1002(1). This definition appears to describe the life insurance arrangement here. Plaintiff's employer established a plan to provide employees' beneficiaries a benefit in the event of death, that is, life insurance. This ought to be the end of the inquiry.

A closer look confirms this reading. First, there is a plan, fund, or program. That's because a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits. Plaintiff concedes that a reasonable person could ascertain the intended benefits and beneficiaries. The Court agrees.

Plaintiff weakly contests whether a reasonable person could ascertain the source of financing. The SDA states that the "Corporation" (JM Family) "shall pay the full amount of the premium to the insurance company providing the insurance coverage." (Doc. 111-1 ¶ 2). Plaintiff cites this language and argues "the actual source of funding is not identified." (Doc. 100 at 9). What Plaintiff appears to be arguing is that the source of financing may be JM Family's general assets. But whether an employer pays benefits out of its general assets is not dispositive of whether a plan exists. *See Williams v. Wright*, 927 F.2d 1540, 1544 (11th Cir. 1991) ("Therefore, we conclude that the payment of benefits out of an employer's general assets does not affect the

8

threshold question of ERISA coverage."). At best, this is only one of the many factors "from the surrounding circumstances." *Donovan*, 688 F.2d at 1373; *see also Stern v. Int'l Bus. Machs. Corp.*, 326 F.3d 1367, 1373 (11th Cir. 2003) ("[A]lthough the *Williams* court found that an employer cannot circumvent ERISA by paying from its general assets that which the statute requires be paid from a separate trust . . . the court did not conclude that the payment of benefits from general assets is never relevant to the question of whether an ERISA plan exists[.]").

Plaintiff also contests whether a reasonable person could ascertain the procedures for receiving benefits. The SDA contains a section titled "Claims Procedure." (Doc. 111-1 ¶ 13). That section provides that JM Family "shall make all determinations" concerning a claim. (*Id.*). Its determinations "shall be in writing" and made "within 90 days of [JM Family's] receipt of the Executive's claim for benefits." (*Id.*). The paragraph also details an appeals process. It provides that the "[a]n Executive who has been completely or partially denied a benefit" may appeal the denial "by filing a written statement" with JM Family no later than 60 days after receipt of the denial. (*Id.*). JM Family must "schedule an opportunity for full and fair review" within 30 days of the appeal. (*Id.*). JM Family must provide a written decision of the appeal within 60 days (or 120 with an extension). (*Id.*).

9

Plaintiff cherry-picks the SDA's references to the "Executive"—here, Mr. Lynch. She argues that the SDA's text provides procedures only for the Executive to file a claim, not his beneficiaries. But considering the SDA's language in context shows that it provides the procedures for beneficiaries to make a claim.

The SDA states that "[a]ny controversy or claim" must be filed with JM Family and that JM Family shall decide "such claim." (Doc. 111-1 ¶ 13). It adds that any decision "denying such claim" shall be "delivered to all parties in interest." (*Id.*). This broad language encompasses claims made by a beneficiary, not just Executive Mr. Lynch.

Newport Defendants have also provided a declaration from Courtney Turney, the person charged with managing JM Family's retirement benefit programs. (Doc. 111-3). Turney states that "JM Family, as fiduciary, interprets the terms of the [SDA] as allowing a beneficiary (or person claiming to be a beneficiary) to assert a claim to the death benefit, and to administratively appeal an adverse determination." (*Id.* ¶ 9). The declaration describes a purported beneficiary doing just that—Dowdell requested payment of the death benefit and proceeded through the claim and appeal process. (*Id.* at 4–6.).

Plaintiff's narrow reading of the SDA is also nonsensical. According to Plaintiff's interpretation, the SDA provides that only Mr. Lynch can make a

claim for his own death benefit, after he has died. This is absurd. Considering the surrounding circumstances, a reasonable person would not read the SDA so narrowly and could ascertain the procedures a beneficiary must follow to receive benefits.

At times, Plaintiff seems to argue that the claim procedures are also too simple. This argument must fail. *See Williams*, 927 F.2d at 1545 (approving procedures simpler than those here). In sum, there is a plan, fund, or program here.

Next, JM Family established or maintained the plan. Plaintiff's argument that JM Family does not maintain the plan with an "ongoing administrative scheme" does not withstand scrutiny. Under a line of cases following *Fort Halifax Packing Co. v. Coyne*, courts have required more than "a one-time, lump-sum payment triggered by a single event" to constitute an ERISA plan because such arrangement "requires no administrative scheme whatsoever to meet the employer's obligation." 482 U.S. 1, 12 (1987); *see also Avera v. Airline Pilots Ass'n Int'l*, 436 F. App'x 969, 979 (11th Cir. 2011) (relying on *Fort Halifax* to affirm the dismissal of an ERISA claim for lack of an ERISA plan).

Newport Defendants have sufficiently shown that JM Family engages in an administrative scheme beyond simply issuing a lump-sum payment. Under the language of the SDA, JM Family serves as the "Fiduciary" and

11

"Administrator" of the plan. (Doc. 111-1 ¶ 12). The SDA was entered into as part of a broader plan to provide executives at JM Family life insurance—the EELIP. (Doc. 111-3 ¶ 2). The EELIP has had up to 150 participating employees. (*Id.* ¶ 4). JM Family tracks and pays the premiums on all the executives' policies, reports the premiums as taxable income, tracks the values of each policy's benefit, and satisfies IRS reporting requirements. (*Id.* ¶ 6). As the facts of this case illustrate, JM Family is also involved in the claims-handling process when a beneficiary requests payment under the policy.

Further, Plaintiff's caselaw on this point is not as expansive as it seems. The seminal case for the "ongoing administrative scheme" requirement is *Fort Halifax*. In that opinion, the Supreme Court acknowledged the argument that providing death benefits often requires minimal administration from the perspective of the beneficiaries. According to the Supreme Court, however, this view "misunderstands what it is that makes a plan a plan." *Fort Halifax*, 482 U.S. at 15 n.9. The Supreme Court went on:

> While death benefits may represent a one-time payment from the perspective of the beneficiaries, the employer clearly foresees the need to make regular payments to survivors on an ongoing basis. The ongoing, predictable nature of this obligation therefore creates the need for an administrative scheme to process claims and pay out benefits, whether those benefits are received by beneficiaries in a lump sum or on a periodic basis.

*Id.* That is exactly the ongoing administrative scheme JM Family has in place. Based on ERISA's plain text and the caselaw interpreting it, JM Family has established or maintained the plan.

And it is indisputable that the plan was created for purpose of providing death benefits to participant's beneficiaries. So the arrangement here satisfies the definition of a welfare benefit plan.

Plaintiff also has standing under ERISA. That's because she asserts that she is the rightful beneficiary under the plan. (Doc. 5 ¶ 26). In her complaint, Plaintiff claims JM Family Defendants and Newport Defendants withheld information from her in an attempt to redirect the death benefit to others. Her claims, no matter how they are labeled, are essentially claims "by a participant or beneficiary . . . to recover benefits due to [her] under the terms of [the] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132. And that this case "involves a dispute over a change of beneficiary form in no way defeats ERISA preemption." *Unum Life Ins. Co. of Am. v. Burton*, No. 8:05CV1423T23MAP, 2006 WL 69068, at *1 (M.D. Fla. Jan. 11, 2006); *see also Brown v. Connecticut Gen. Life Ins.*, 934 F.2d 1193, 1196 (11th Cir. 1991) (finding completely preempted a "claim for an order declaring [the plaintiff] the rightful beneficiary and requiring [the defendant] to pay her the benefits

13

of the policy"); *Brown v. Cemex, Inc.*, No. CIV.A. 205CV552C, 2005 WL 3133778, at *2 (S.D. Ala. Nov. 22, 2005) (same).

Lastly, Plaintiff argues that regardless of the existence of an ERISA plan, she could not have brought her claims under ERISA because she seeks extracontractual relief. (Doc. 68 at 19–20). But this argument cannot defeat complete preemption. *See Amos v. Blue Cross-Blue Shield of Alab.*, 868 F.2d 430, 431 (11th Cir. 1989) (holding that ERISA preemption completely eliminates state causes of action seeking extracontractual or punitive damages).

Because Plaintiff's claims fall within the scope of ERISA, and she has standing to sue, she could have brought her claims under § 502(a). Step one of the test to determine whether ERISA completely preempts Plaintiff's claims has been satisfied.

The Court next turns to step two to determine "whether no other legal duty supports the plaintiff's claims." *Connecticut State Dental Ass'n*, 591 F.3d at 1345. Plaintiff does not seriously challenge this step in either her remand motion or her opposition to dismissal. (Docs. 68, 100). The Court finds that it is satisfied. Plaintiff claims JM Family Defendants and Newport Defendants concealed from her that the change in beneficiary form was ineffective based on "the express terms of the Lynch Life Insurance Policy" and nonetheless tried to redirect those benefits. (Doc. 5 ¶¶ 27–31, 62–70, 253–73). Accordingly,

14

Plaintiff's claims directly turn on the implementation of the ERISA-governed plan and do not arise out of an independent duty. *See, e.g., Gables Ins. Recovery, Inc. v. Blue Cross & Blue Shield of Fla., Inc.*, 813 F.3d 1333, 1338 (11th Cir. 2015) (holding claims that "necessarily depend upon a breach of the ERISA plan . . . do not arise out of a separate duty independent of the plan").

In short, Plaintiff's claims satisfy both steps of the complete preemption test. Plaintiff could have brought her claims under § 502(a). Her claims fall within the scope of ERISA, the life insurance arrangement at issue is an employee welfare benefit plan, and she has standing under ERISA. And no other legal duty supports Plaintiff's claims. So her claims are completely preempted by ERISA.

One last thing about complete preemption—Plaintiff requests a certification of appealability. Under 28 U.S.C. § 1292(b), the Court may certify that its Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" Rather than provide argument and authority to show there is a substantial ground for difference of opinion regarding the application of complete preemption in this case, Plaintiff points out that other courts have certified appeals in cases involving ERISA preemption. (Doc. 100 at 22–23). Given this inadequate showing, the Court, in its discretion, will not grant this relief. *See*

15

*Jenkins v. BellSouth Corp.*, 491 F.3d 1288, 1291 (11th Cir. 2007) ("Under section 1292(b), both the district court and the court of appeals exercise discretion about granting interlocutory review[.]").

With federal jurisdiction secured, Newport Defendants argue the Court should dismiss the amended complaint as conflict-preempted. (Doc. 42). In addition to complete preemption, ERISA creates conflict preemption (also referred to as defensive preemption). Conflict preemption is a "substantive defense to preempted state law claims" and "arises from ERISA's express preemption provision, § 514(a), which preempts any state law claim that 'relates to' an ERISA plan." *Connecticut State Dental Ass'n*, 591 F.3d at 1344. Conflict preemption is broader than complete preemption. So "if the plaintiff's claims are completely preempted, then they are also defensively preempted." *Cotton v. Massachusetts Mut. Life Ins.*, 402 F.3d 1267, 1281 (11th Cir. 2005) (cleaned up).

Because Plaintiff's claims are completely preempted, they are also conflict preempted. The Court dismisses Plaintiff's Amended Complaint (Doc. 5) and grants her request for leave to amend to re-plead under ERISA. (Doc. 68 at 20).

Accordingly, it is now

**ORDERED:**

1. Plaintiff's Motion to Remand (Doc. 100) is **DENIED.** Only the *Lynch* matter was removed to this Court. Further, the Court **SEVERS** and **REMANDS** all claims from the *Lynch* matter other than "Count XII: Attempt to Defraud" and "Count XIII: Conspiracy to Commit Fraud in the Concealment."

2. Newport Defendants' Motion to Dismiss (Doc. 42) is **GRANTED.**

3. Newport Defendants' Motion to Strike (Doc. 126), JM Family Defendants' Motion to Dismiss (Doc. 84), and the remaining motion involving remanded claims (Doc. 88) are **DENIED as moot.**

4. Busciglio Defendant's Motion to Dismiss (Doc. 73) is also **DENIED as moot.**[3]

5. The Clerk is **DIRECTED** to transmit a certified copy of this Order to the Clerk of the Twentieth Judicial Circuit in and for Lee County, Florida.

6. **On or before March 10, 2025**, Plaintiff must file a second-amended complaint consistent with this Order.

---

[3] Plaintiff filed a Rule 21 motion to drop Defendants Busciglio & Sheridan Law Group, P.A., Joshua Sheridan, and Martha Aristazabal as improperly joined. (Doc. 93). The Court denied the motion on procedural grounds. (Doc. 94). Plaintiff is now directed to drop those Defendants from her second-amended complaint.

17

**DONE** and **ORDERED** in Fort Myers, Florida on February 24, 2025.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

18